**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

PORTLAND MUSIC HOLDINGS, LLC,    )
                                    )
        Plaintiff,    )
                                    )    CASE NO.
v.    )
                                    )
THE CITY OF PORTLAND,    )
                                    )
        Defendant.    )

## COMPLAINT

Plaintiff Portland Music Holdings, LLC ("PMH" or "Plaintiff") by and through its undersigned counsel, complains against Defendant the City of Portland (the "City" or "Defendant"), Maine as follows:

### PARTIES

1.    PMH is a Delaware limited liability company with a principal place of business in Scarborough, Maine and is qualified to do business in Maine.

2.    Defendant is a municipality located in the State of Maine.

### JURISDICTION AND VENUE

3,    This is an action seeking relief for the Defendant's violation of PMH's rights in violation of the Constitution of the State of Maine and the United States Constitution as applicable to the states through the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, 23 M.R.S. § 3022 et seq., and 23 M.R.S. § 154 et. seq.

4.    This Court has subject matter jurisdiction over Plaintiffs' federal claims under its federal question jurisdiction, 28 U.S.C. § 1331.

5.    This Court has subject matter jurisdiction over Plaintiffs' state law claims under its supplemental jurisdiction, 28 U.S.C. § 1367.

1

6.　　Venue is proper in the District of Maine under 28 U.S.C. § 1391(b)(1)-(2) because Defendant is a city located in the State of Maine, and because a substantial part of the events or omissions giving rise to the claims occurred in the State of Maine.

**FACTS**

7.　　PMH was formed on July 30, 2024, as a joint venture between Portland Performance Ventures, LLC  and Live Nation Worldwide, Inc. for the exclusive purpose of developing a new music venue  (the "PMH Venue") at the site of an old printing press building at 244 Cumberland Avenue, Portland, Maine (the "PMH Site").

8.　　On or about June 26, 2024, the owner of the PMH Site granted an option to acquire the PMH Site to PMH's predecessor, which option was subsequently assigned to PMH (the "Option").  At all times relevant to this Complaint, PMH has been the holder of the Option.

9.　　On November 4, 2024, after several years of work, and extensive public input, the Portland City Council (the "Council") unanimously adopted a new Land Use Code (the "2024 Code") which went into effect on December 4, 2024.

10.　　After receipt of the Option, and in reliance on the 2024 Code, PMH incurred substantial costs to design and develop the PMH Venue complying in all respects with the 2024 Code, including, without limitation, review fees imposed by the City, option fees, engineering fees, architectural fees and legal fees.

11.　　On December 19, 2024, PMH submitted its application for site plan approval (the "Application") with the City of Portland Planning Board (the "Planning Board").

12.　　The Planning Board conducted two (2) workshops regarding the Application on March 23, 2025, and May 27, 2025, during which feedback was provided on PMH's plan for the PMH Venue and PMH amended its plans to address all concerns that were raised.

13.     The Application was on the Agenda for public hearing and approval at the Planning Board meeting that took place on August 12, 2025, and PMH had every expectation that the Application would be approved at that meeting.

14.     Notwithstanding the fact that the City had just gone through an extensive process to update its land use ordinances and had recently adopted the 2024 Code, the day before the scheduled Planning Board meeting, on August 11, 2025, the Council passed a 180-day moratorium on the development of large-scale theater and performance halls retroactive to December 1, 2024 (the "Moratorium").

15.     The Moratorium  went into effect thirty (30) days after passage on September 10, 2025, and would expire on March 9, 2026.

16.     Despite the fact that the Moratorium would not go into effect until September, because the Moratorium was retroactive to December 1, 2024, 18 days before the Application was filed, the Planning Board refused to hold a public hearing on the Application at their meeting held on August 12, 2025, and refused to do any further review of the pending Application.

17.     Upon information and belief, at the time that the Moratorium was passed, the PMH Venue was the only large-scale theater or performance hall being proposed in the City of Portland.

18.     The stated reasons for the Moratorium were based primarily on two things: (a) a concern about traffic and parking minimums for theaters and performance halls, and (b) the impact of new large theaters and performance halls on the local creative economy, character and vitality of the City.

19.     Contrary to the stated reasons, the actual reason for the Moratorium was to stop the development of the PMH Venue because some individual members of the Council have

3

personal animosity towards PMH and its owners in general, and Live Nation in particular, and were attempting to shield other venues from potential competition.

20.    The Moratorium directed the City's Housing and Economic Development Committee (the "HEDC") to review the 2024 Code and develop amendments to address the concerns raised by the Moratorium.

21.    The HEDC held multiple meetings and recommended that Chapter 4 of the 2024 Code be amended to require certain venues to enter into community benefit agreements which would establish a trust fund for the benefit of the local arts and entertainment community (the "Chapter 4 Amendments").

22.    The Chapter 4 Amendments were intended to address concerns regarding the potential harm to the creative community, character and vitality of Defendant's downtown region and were adopted by the Council on January 5, 2026, while the Moratorium was still in effect.

23.    PMH indicated its willingness to move forward with the PMH Venue in compliance with the Chapter 4 Amendments.

24.    Because the Chapter 4 Amendments did not stop PMH's intent to develop the PMH Venue, the HEDC was then asked to consider a further amendment to the 2024 Code to enlarge the dispersal distance between certain sized performance halls from the 100 feet (as set forth in the 2024 Code) to 750 feet in order to "mitigate traffic impacts associated with patrons arriving at and departing from multiple venues simultaneously" (the "Buffer Amendment").

25.    The PMH Site is not within 100 feet of any other performance hall but is within 750 feet of Merrill Auditorium, a performance venue owned by the City.  As such, adoption of the Buffer Amendment would make it impossible for PMH to continue with the PMH Venue at the PMH Site.

26.     The HEDC scheduled a special meeting for February 3, 2026, to consider the Buffer Amendment (the "HEDC February Meeting").

27.     With the Buffer Amendment having not yet been passed, if the Moratorium expired on March 6, 2026, as originally anticipated, PMH would have been able to proceed with the Application in compliance with the 2024 Code.

28.     Rather than allow the Application to proceed, the Council voted to extend the Moratorium by 179 days to September 4, 2026.

29.     At the HEDC February Meeting, some, but not all, of the members of the HEDC voted to recommend that the proposed Buffer Amendment be reviewed by the Planning Board.

30.     The review to be conducted by the Planning Board was to determine if the proposed Buffer Amendment would be consistent with Defendant's comprehensive policy framework including Defendant's *Portland's Plan 2030* (the "Comprehensive Plan"), *One Climate Future*, the *Downtown Vision Plan* and the *Portland Peninsula Transit Study* (collectively, the "Policy Framework").

31.     The Planning Board held a workshop regarding the proposed Buffer Amendment on March 10, 2026, and a public hearing on March 24, 2026.

32.     Part of the materials considered by the Planning Board at the March 24th meeting was a Memorandum prepared by Defendant's Planning Department (the "Planning Staff Memo") dated March 18, 2026, and updated March 23, 2026.

33.     The 76 page Planning Staff Memo concluded, in pertinent part, as follows:

-The City of Portland Parking Division conducted a parking lot occupancy assessment of parking lots and garages open to the general public within both a ¼ mile of the proposed PMH Site, and ½ mile of the proposed PMH Site on a Thursday, Friday, and Saturday in May of 2025. Each lot was counted at least twice, and in some cases, up to four times, over the three-day period with all counts occurring after 5:00 PM.

- The results showed that of the approximately 2,700 parking spaces within a ¼-mile radius of the proposed PMH Site, the average utilization rate between 5:30 PM and 8:00 PM was 19%. For parking spaces located between ¼ and ½ mile from the PMH Site, utilization after 5:00 PM averaged 18%. These findings suggest that roughly 80% of the parking supply remained available during those times, indicating sufficient existing capacity to support the proposed PMH Venue and other uses. These findings are consistent with the 2017 study and reflect a broader trend of reduced parking demand, particularly during evening hours. With utilization below 20% and available capacity at approximately 80%, these numbers indicate that **parking capacity remains within the existing supply, aligning with the recommendations of both the 2009 Portland Peninsula Study and the 2017 study, which advised the City to focus on managing the existing parking supply rather than expanding it.** (emphasis added)

- Given that the proposed PMH Venue includes no on-site parking, **in accordance with zoning requirements**, the project's Traffic Movement Permit (TMP) included an analysis of existing parking to understand trip distribution within the surrounding area. PMH provided a map of available off-street parking facilities, including garages and lots, identifying the total number of spaces within four-tenths of a mile of the PMH Site. These facilities were documented in the March 2025 City of Portland Parking Division's Annual Parking Survey. Based on distance to the venue, current hours of operation, and capacity, the applicant identified five lots and garages as the most likely parking destinations for patrons of the PMH Venue. Those five facilities alone account for approximately 2,800 total parking spaces. (emphasis added)

34.    On March 24, 2026, the Planning Board **unanimously** voted to recommend to the Council that the 2024 Code **not** be amended to increase the size of the buffer, because to do so would not be consistent with the Comprehensive Plan or the Policy Framework and would be contrary to the goals of the 2024 Code.

35.    Notwithstanding that the Planning Board recommended that the 2024 Code not be amended to increase the buffer from 100 to 750 feet, on April 27, 2026, almost 500 days after the Application was submitted, the Council voted to do just that and adopted the Buffer Amendment effective as of May 27, 2026.

36.    Also on April 27, 2026, the Council voted to end the Moratorium as of May 27, 2026.

37.     As originally passed at the April 27th City Council meeting, the Buffer Amendment was not retroactive.

38.     On May 18, 2026, the City Council amended the prior Council Order for the Buffer Amendment to add the following:

> The following amendments apply to all proceedings, applications, petitions, and approvals required under the City's Land Use Code that were or have been pending before any officer, board, or agency of the City on or any time after December 1, 2024 for the development of new theaters or performance halls with a capacity exceeding 1000 people.

39.     Upon information and belief, the Application was the only application for the development of a new theater or performance hall with a capacity exceeding 1000 people pending on or after December 1, 2024.

40.     PMH had made arrangements with the owners of private parking facilities to address any issues relating to parking and the City knew of this arrangement before enacting the Buffer Amendment.

41.     Despite repeated requests from PMH, the City has failed and refused to have public hearing on the Application.

42.     It would be futile for PMH to  pursue the Application.

43.     PMH had a contractual relationship with the owner of the PMH Site.

44.     Enactment of the Moratorium and the Buffer Amendment (collectively, the "City's Obstacles") with retroactive effect to December 1, 2024, was done in bad faith for the sole purpose of stopping the PMH Venue and impaired the contract that PMH has with the owner of the PMH Site because PMH cannot develop the PMH Venue at the PMH Site.

45.     The impairment to the contract between the owner of the PMH Site and PMH due to the City's Obstacles is significant.

46.    The impairment to PMH's contract rights is not justified because the City's Obstacles serve no important public purpose.

47.    Enactment of the City's Obstacles with retroactive effect to December 1, 2024, was fundamentally unfair and an abuse of power by the City.

48.    Enactment of the City's Obstacles with retroactive effect to December 1, 2024, had no rational relationship to serving public health, morals, safety or welfare and advanced no legitimate government interest.

49.    Enactment of the City's Obstacles with retroactive effect to December 1, 2024, was done with bad faith and intentional bias to prevent PMH from developing the PMH Venue because certain members of the Council did not like PMH and its owners and/or wanted to prevent PMH from competing with other venues, including a venue owned by the City.

50.    Enactment of the City's Obstacles with retroactive effect to December 1, 2024, worked to directly deprive PMH of the use and enjoyment of its property without just compensation by interfering with PMH's reasonable investment backed expectations.

51.    PMH acquired vested rights to pursue development of the PMH Venue in accordance with the terms of the 2024 Code as it existed when PMH filed the Application.

52.    Enactment of the City's Obstacles was done solely to prevent the legal use by PMH of the PMH Site to develop the PMH Venue.

53.    At the time that the Application was filed in reliance on the 2024 Code, the City was not considering any increase in the dispersal distance between certain sized performance halls from 100 feet to 750 feet.

54.    At the time that the Application was filed in reliance on the 2024 Code, the City was not considering a moratorium on the development of large-scale theater and performance halls.

55.    At the time the Application was filed, PMH had no knowledge that the City's Obstacles would be enacted.

56.    Upon information and belief, persons and/or entities that would have competed with PMH and/or Live Nation, including out of state lobbying groups as well as other organized associations, improperly influenced certain members of the Council in order to cause the City's Obstacles to be enacted.

## COUNT I
### (CONSTITUTIONAL VIOLATION: IMPAIRMENT OF CONTRACT)

57.    Plaintiff repeats and realleges paragraphs 1-56 of the Complaint as if fully set forth herein.

58.    Article 1, Section 10 of the United States Constitution prohibits states and their political subdivisions from passing laws that impair contracts.

59.    The Option is a contract.

60.    Enactment of the City's Obstacles substantially impaired Plaintiff's contractual rights.

61.    Enactment of the City's Obstacles was unreasonable and unnecessary to serve any legitimate important public purpose.

62.    Enactment of the City's Obstacles was arbitrary and capricious and motivated by animosity to Plaintiff.

9

63.     The acts of Defendant, committed under color of law, and as hereinabove stated, deprived Plaintiff of its rights, privileges and immunities in violation of 42 U.S.C. §§ 1983,  and guaranteed by the Constitution of the United States of America and the amendments thereto.

WHEREFORE, Plaintiff prays that the Court declare that the Moratorium was void, that the Buffer Amendment be stricken as unconstitutional, that it be awarded damages according to proof, that it be awarded its attorney fees, that it be awarded its costs of suit incurred herein and for such other and further relief as the Court deems appropriate in the circumstances.

### COUNT II
### (CONSTITUTIONAL VIOLATION:  SUBSTANTIVE DUE PROCESS)

64.     Plaintiff repeats and realleges paragraphs 1-56 of the Complaint as if fully set forth herein.

65.     The Fourteenth Amendment to the United States Constitution protects fundamental liberty interests against government action that is fundamentally unfair and constitutes an abuse of power.

66.     The City's Obstacles are fundamentally unfair and have no rational relationship to public health, morals, safety or welfare.

67.     To the contrary, the City's Obstacles were intended to, and did, in fact, target Plaintiff intentionally and were the result of Defendant's bias against Plaintiff.

68.     The City's Obstacles violate Plaintiff's constitutional substantive due process right.

69.     The acts of Defendant, committed under color of law, and as hereinabove stated, deprived Plaintiff of its rights, privileges and immunities in violation of 42 U.S.C. §§ 1983,  and guaranteed by the Constitution of the United States of America and the amendments thereto.

WHEREFORE, Plaintiff prays that the Court declare that the Moratorium was void, that the Buffer Amendment be stricken as unconstitutional, that it be awarded damages according to proof, that it be awarded its attorney's fees, that it be awarded its costs of suit incurred herein and for such other and further relief as the Court deems appropriate in the circumstances.

## COUNT III
## (CONSTITUTIONAL VIOLATION:  UNLAWFUL TAKING)

70. Plaintiff repeats and realleges paragraphs 1-56 of the Complaint as if fully set forth herein.

71. The Fifth Amendment of the United States Constitution prohibits a governmental entity from taking private property without just compensation.

72. The City's Obstacles did not advance a legitimate government interest.

73. The City's Obstacles interfered with the Plaintiff's reasonable investment backed expectations.

74. The City's Obstacles constitute a taking of Plaintiff's property for which it has not received just compensation.

75. The acts of Defendant, committed under color of law, and as hereinabove stated, deprived Plaintiff of its rights, privileges and immunities in violation of 42 U.S.C. §§ 1983,  and guaranteed by the Constitution of the United States of America and the amendments thereto.

WHEREFORE, Plaintiff prays that the Court declare that the Moratorium was void, that the Buffer Amendment be stricken as unconstitutional, that it be awarded damages according to proof, that it be awarded its attorney's fees, that it be awarded its costs of suit incurred herein and for such other and further relief as the Court deems appropriate in the circumstances.

## COUNT IV
## (CONSTITUTIONAL VIOLATION:  PROCEDURAL DUE PROCESS)

76.     Plaintiff repeats and realleges paragraphs 1-56 of the Complaint as if fully set forth herein.

77.     The Fourteenth Amendment to the United States Constitution prohibits states from acting in a manner that deprives citizens of fundamental liberty interests without allowing for a fair process.

78.     The City's Obstacles violated Plaintiff's procedural due process rights, specifically:

(a) through enactment of a retroactive Moratorium one day prior to the scheduled Planning Board hearing;

(b) because it was done exclusively for the purpose of allowing Defendant sufficient time to pass the Buffer Amendment which was designed to prevent development of the PMH Venue.

79.     The acts of Defendant, committed under color of law, and as hereinabove stated, deprived Plaintiff of its rights, privileges and immunities in violation of 42 U.S.C. §§ 1983,  and guaranteed by the Constitution of the United States of America and the amendments thereto.

WHEREFORE, Plaintiff prays that the Court declare that the Moratorium was void, that the Buffer Amendment be stricken as unconstitutional, that it be awarded damages according to proof, that it be awarded its attorney's fees, that it be awarded its costs of suit incurred herein and for such other and further relief as the Court deems appropriate in the circumstances.

12

## COUNT V
## (CONSTITUTIONAL VIOLATION:  ME. CONST. ART. 1, §6-A)

80.     Plaintiff repeats and realleges paragraphs 1-56 of the Complaint as if fully set forth herein.

81.     Pursuant to the Maine Constitution, Article 1, section 6-A, "No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of that person's civil rights or be discriminated against in the exercise thereof."

82.     The City's Obstacles are fundamentally unfair and have no rational relationship to public health, morals, safety or welfare.

83.     To the contrary, the City's Obstacles were intended to, and did, target Plaintiff intentionally and were the result of Defendant's bias against Plaintiff.

84.     The City's Obstacles deprived Plaintiff of its property without due process of law and denied Plaintiff the equal protection of the law and, as such, violated Plaintiff's constitutional substantive and procedural due process rights.

WHEREFORE, Plaintiff prays that the Court declare that the Moratorium was void, that the Buffer Amendment be stricken as unconstitutional, that it be awarded damages according to proof, that it be awarded its attorney's fees, that it be awarded its costs of suit incurred herein and for such other and further relief as the Court deems appropriate in the circumstances.

## COUNT VI
## (CONSTITUTIONAL VIOLATION:  ME. CONST. ART. 1, §§19, 21)

85.     Plaintiff repeats and realleges paragraphs 1-56 of the Complaint as if fully set forth herein.

13

86.     Pursuant to the Maine Constitution, Article 1, section 19, " Every person, for an injury inflicted on the person or the person's reputation, property or immunities, shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay."

87.     Pursuant to the Maine Constitution, Article 1, section 21, "Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it."

88.     No public exigencies existed which required enactment of the City's Obstacles with retroactive effect to December 1, 2024.

89.     Enactment of the City's Obstacles with retroactive effect to December 1, 2024, inflicted injury on Plaintiff's property and resulted in a taking of Plaintiff's property without just compensation.

WHEREFORE, Plaintiff prays that the  Court declare that the Moratorium was void, that the Buffer Amendment be stricken as unconstitutional, that it be awarded damages according to proof, that it be awarded its attorney's fees, that it be awarded its costs of suit incurred herein and for such other and further relief as the Court deems appropriate in the circumstances.

Dated:  June 9, 2026                                    /s/ Lee H. Bals

                                                       Lee H. Bals, Bar #3412

                                                       Attorney for Plaintiff

                                                       MARCUS|CLEGG
                                                       16 Middle Street, Unit 501
                                                       Portland, ME 04101
                                                       (207) 828-8000
                                                       lhb@marcusclegg.com