**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| PORTLAND MUSIC HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL NO. 2:26-cv-00304-JCN |
| v. | ) | |
| | ) | |
| THE CITY OF PORTLAND, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND INCORPORATED MEMORANDUM OF LAW**

NOW COMES Plaintiff, Portland Music Holdings, LLC ("PMH"), by and through its undersigned attorneys, and opposes *Defendant's Motion to Dismiss for Failure to State a Claim* [D.E. #9] (the "MTD") for the reasons set forth below.

## INTRODUCTION

When all is said and done, the MTD is a thinly veiled attempt to obfuscate the facts and distract from Defendant's outrageous conduct. Boiled down to its essence, the gravamen of the MTD is the contention that PMH's claims are not ripe. Such is not the case. As Defendant admits, PMH's Application[1] does not meet the buffer zone dispersal requirements required by the Buffer Amendment. MTD at p. 5. As Defendant's admission makes clear, "there [is] no question ... about how the 'regulations at issue apply to the particular land in question…'" and, accordingly, PMH's claims are ripe. *Pakdel v. City and County of San Francisco, California*, 594 U.S. 474, 478, 141 S.Ct. 2226, 2230, 210 L.Ed.2d 617(2021)[internal citations omitted].

[1] Defined terms not otherwise defined herein have the same meaning as set forth in PMH's Complaint [D.E. #1]

The balance of Defendant's arguments are equally flawed. The allegations in the Complaint are clearly sufficient to support PMH's claims. The MTD must be denied.

## **STANDARD OF REVIEW**

In considering a motion to dismiss, the Court must accept the factual allegations in the Complaint as true and "draw reasonable inferences from those facts in plaintiff's favor." *Pike v. Budd*, 133 F.4th 74, 82 (1st Cir. 2025). To survive a motion to dismiss, "…the complaint need only state sufficient factual matter to satisfy facial plausibility." *Id.* Rule 8(a)(2) of the Federal Rules of Civil Procedure merely requires a, "short and plain statement of the claim showing the pleader is entitled to relief." As the Supreme Court has held, "…the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. " *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). As noted in *Iqbal,*

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged… The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully…

*Id.* at 678 [internal citations omitted]

In short, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. As discussed below, PMH's Complaint satisfies this standard.

# ARGUMENT

## A. PMH'S CLAIMS ARE RIPE

As noted, the primary thrust of the MTD is an argument that PMH's claims are not ripe because the Planning Board has not taken final action on the Application. That argument reflects a fundamental misunderstanding of the finality requirement.

As the United States Supreme Court has held on multiple occasions, "nothing more than *de facto* finality is necessary." *Pakdel* at 479. Specifically,

> …because a plaintiff who asserts a regulatory taking must prove that the government "regulation has gone 'too far,' " the court must first "kno[w] how far the regulation goes." *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 348, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986). ***Once the government is committed to a position, however, these potential ambiguities evaporate and the dispute is ripe for judicial resolution.***

*Id.* (emphasis added)

In order to establish that a regulatory taking claim is ripe, all that is required is a showing that, "there [is] no question…about how the 'regulations at issue apply to the particular land in question.'" *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 739**,** 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997) [internal citations omitted].

In *Palazzolo v. Rhode Island*, 533 U.S. 606, 121 S. Ct. 2448, 150 L.Ed.2d 592 (2001), the United States Supreme Court confronted an argument from the Rhode Island Coastal Resources Management Council that is somewhat similar to the argument Defendant now makes. In holding that the claim for a regulatory taking was ripe notwithstanding the fact that Palazzolo had not explored every conceivable way to develop the property at issue, Justice Kennedy writing for the majority held as follows:

> While a landowner must give a land-use authority an opportunity to exercise its discretion, ***once it becomes clear that the agency lacks the discretion*** to permit any development, ***or the permissible uses of the property are known to a reasonable degree of certainty, a takings claim is likely to have ripened***.

*Id.* at 620 (emphasis added).

Perhaps foreshadowing exactly what the Defendant is trying to do here, Justice Kennedy went on to note that,

> Government authorities, of course, may not burden property by imposition of repetitive or unfair land-use procedures in order to avoid a final decision.

*Id.* at 621

Just as was the case in *Palazzolo*, in this case any further proceedings before the Planning Board are not necessary to establish the fact that the City's Obstacles (as described in the Complaint) prevent PMH from developing the PMH Venue on the PMH Site. There is no dispute in this regard and the ripeness doctrine does not require PMH to wait for the inevitable denial of the Application before seeking redress for the violation of its Constitutional rights. *Id.* at 622.

There is simply no question that the Planning Board lacks the discretion to approve the Application, in any form, because of the Buffer Amendment. To the extent that Defendant believes that it can be shielded from the consequences of its unconstitutional behavior by finding some theoretical flaw in the Application unrelated to the Buffer Amendment, that is a question of fact for a different day and, likely, a different court. The allegations in the Complaint, which must be accepted as true for purposes of the MTD, are that the Planning Board had already conducted two workshops on the Application, PMH had addressed all issues raised and PMH had every expectation that the Application was going to be approved prior to enactment of the Moratorium. Complaint ¶¶ 12-13. Furthermore, the Complaint alleges that notwithstanding repeated requests from PMH, Defendant has failed and refused to allow a public hearing on the Application. *Complaint* at ¶ 41. The Court may reasonably infer from that fact taken together with the factual allegations regarding the Moratorium and the timing thereof (Complaint at ¶¶

14-39) that Defendant is imposing "repetitive or unfair land-use procedures in order to avoid a final decision." *Palazzolo* at 621.[2]

It is clear that the finality requirement is satisfied and Defendant has admitted as such: regardless of anything else in the Application, the buffer zone dispersal requirements of Article 6.4.42 of Defendant's Land Use Code (i.e., the Buffer Amendment) could not be met. MTD, p. 5. As a result, the Planning Board has no discretion: it cannot approve the development of the PMH Venue on the PMH Site. PMH's claim is ripe.

**B. PMH'S CONTRACT CLAIM**

Defendant argues that PMH's claim for violation of the Contracts Clause should be dismissed because the Complaint does not specify the "inherent bargained-for terms" of the Option. Yet the MTD fails to explain why the allegations in the Complaint are nevertheless insufficient to state a claim.

As this Court noted in *Astrazeneca Pharmaceuticals LP v. Frey, et al.*, 2026 WL 2145194, at *14 (D. Me. July 27, 2026), a claim for violation of the Contracts Clause requires four (4) specific findings: (1) whether there is a contractual relationship, (2) whether the law at issue impairs that contractual relationship, (3) whether the impairment is substantial, and (4) whether the impairment was "reasonable and necessary to serve an important government interest." The allegations in the Complaint are sufficient to plead the elements of a violation of the Contracts Clause.

First, there can be no doubt that the Option is a contract of a type that is protected by the Contracts Clause. In *Astrazeneca,* this Court concluded that the "contract" at issue did not

[2] Indeed, a reasonable inference that the Court may draw from the allegations in the Complaint is that the *only* plausible basis upon which the Application would inevitably be denied is its failure to comply with the Buffer Amendment.

implicate the Contracts Clause because it was a Pharmaceutical Pricing Agreement which was "merely 'a form' that manufacturers use to opt into the 340B program." *Id.* at 15 [internal citations omitted]. The Court went on to note that such agreements simply incorporated statutory obligations and memorialized an agreement to adhere to those obligations. *Id.* Thus, like government licenses, charters, grants and consensual custody orders and settlement orders, the Court held that a Pharmaceutical Pricing Agreement was not, as a matter of law, a "contract" protected by the Contracts Clause.

In this case, PMH has alleged both that PMH held the Option to purchase the PMH Site and that PMH had a contractual relationship with the owner of the PMH Site. Complaint at ¶¶ 8, 43. Those allegations must be accepted as true for purposes of the MTD and those allegations establish that the Option is the type of contract that the Contract Clause protects.[3] Contrary to the position taken in the MTD, the specifics of the Option contract are not relevant to determining whether the Option itself is protected by the Contracts Clause.

The second element necessary to establish a claim under the Contracts Clause is impairment. Paragraph 44 of the Complaint alleges that the City's Obstacles were enacted in bad faith, for the sole purpose of stopping the PMH Venue, and "impaired the contract that PMH has

---

[3] Notwithstanding the latitude afforded by the notice pleadings standards of Fed. R. Civ. P. 8(a)(2), if the Court believes that the allegations are insufficient to establish that the Option is the type of contract protected by the Contracts Clause, PMH hereby respectfully requests leave to amend the Complaint to specifically allege that the Option contained negotiated terms, was a transactional bargained for contract and contained obligations that could be enforced through a contract claim (such as specific performance).

with the owner of the PMH Site because PMH cannot develop the PMH Venue at the PMH Site."[4] There is no basis to grant the MTD based on the second prong of the Contracts Clause analysis.

The third element is a finding that the impairment was substantial. The Complaint specifically alleges that the impairment was significant. Complaint at ¶ 45. The significance of the impairment is also self-evident based on the allegations of Paragraph 44 of the Complaint – because the City's Obstacles make it impossible for PMH to develop the PMH Venue on the PMH Site, the Option is worthless. One is hard pressed to think of how the impairment could be more significant.

Finally, the final element is whether the impairment was both reasonable and necessary to serve an important government purpose. *Astrazeneca* at ¶ 14. Paragraphs 46-49 of the Complaint contain allegations that the City's Obstacles served no important public purpose, that they were fundamentally unfair and an abuse of power, that they had no rational relationship to serving public health, morals, safety or welfare and that they advanced no legitimate government interest. Further, the allegations in Paragraph 33 and 34 of the Complaint detail how the recommendation from both the Defendant's own Planning Department and the Planning Board was against enactment of the Buffer Amendment. In fact, the allegations in Paragraph 33 of the Complaint go into great detail as to why the Buffer Amendment was both not necessary and served no important government purpose.

In short, Defendant's efforts to dismiss PMH's claims that the City's Obstacles violated the Contract Clause fall well short of the mark. The allegations in the Complaint are sufficient to

[4] Again, these allegations, which must be accepted as true, are sufficient to satisfy the second prong. If, however, the Court believes that additional allegations are necessary, PMH hereby respectfully requests leave to amend the Complaint to allege that enactment of the City's Obstacles rendered the Option valueless since the only purpose of the Option was to give PMH the contractual right to develop the PMH Venue on the PMH Site.

state a claim and Defendant is free to do whatever discovery it deems necessary so that it can understand the particulars of the contract at issue. That level of detail is not required at this stage of the proceedings. *Iqbal* at 678.

## C. PMH'S SUBSTANTIVE DUE PROCESS CLAIM

Defendant argues that PMH has failed to state a claim for violation of substantive due process because the "allegations of the Complaint in paragraphs 65-69 are conclusory recitations of the cause of action elements." Defendant conveniently ignores the allegations in Paragraphs 1 through 56 of the Complaint.

Specifically, Defendant argues that PMH failed to allege that it had vested rights. Such is not the case. Paragraph 51 of the Complaint alleges the following:

> PMH acquired vested rights to pursue development of the PMH Venue in accordance with the terms of the 2024 Code as it existed when PMH filed the Application.

Defendant then goes on to argue that PMH has no vested rights in the Application based on *Portland v. Fisherman's Wharf Assocs.*, 541 A. 2d 160 (Me. 1988).[5] Reliance on *Fisherman's Wharf* is misplaced. Contrary to the facts in this case as alleged in the Complaint, *Fisherman's Wharf* involved a claim by a developer whose application was filed after the developer knew (or should have known) about the enactment of the ordinances at issue. Under those circumstances,

---

[5] Whether PMH has a vested right is a question of state law. *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."), *Davila-Lopes v. Zapata*, 111 F.3d 192, 195 (1st Cir. 1997)("The critical and threshold question is whether appellant's interest in being given courtesy privileges is "grounded in substantive legal relationships defined by ... specific state or federal rules of law."")

the Maine Law Court determined that the developer had not acquired vested rights simply by virtue of having filed its application.

By contrast, in *Thomas v. Zoning Bd. Of Appeals of City of Bangor,* 381 A.2d 643 (Me. 1978), the Law Court held that an applicant for a building permit can acquire vested rights (1) by virtue of a "substantial good faith change made in reliance on the zoning law in effect at the time of the application, or on the probability of the issuance of a permit approval…" or (2) "when a municipality wrongfully delays in passing on the application until after the effective date…" of the ordinance at issue, or (3) when a municipality, "…arbitrarily fails to perform a ministerial duty to issue a permit to which the applicant was entitled." Finally, and most germane to the issues at bar,

> Furthermore, a bad faith or discriminatory enactment of a zoning ordinance for the purpose of preventing a legal use by the applicant may confer vested rights on the applicant. See *Commercial Properties, Inc. v. Peternel*, 418 Pa. 304, 211 A.2d 514 (1965); *Anderson v. City Council of Pleasant Hill*, 229 Cal.App.2d 79, 40 Cal.Rptr. 41 (1964).

*Id.* at 647

This principle was reaffirmed in *Kittery Retail Ventures, LLC v. Town of Kittery*, 856 A.2d 1183 (Me. 2004). In *Kittery*, the Law Court concluded that a developer had not acquired vested rights because the developer had knowledge of the pending change to the ordinance prior to filing the application and there was, "no evidence that the Kittery Planning Board engaged in delaying tactics, nor is there other evidence of bad faith on the part of any town official." *Id.* at 1192. That is in stark contrast to the allegations that PMH has made in the Complaint.

As noted above, PMH has alleged that it acquired vested rights. Complaint at ¶ 51. PMH has also alleged that enactment of the City's Obstacles was done solely to prevent the legal use by PMH of the PMH Site to develop the PMH Venue. Complaint at ¶ 52. PMH has also alleged the following:

-that it relied on the 2024 Code in obtaining the Option and proceeding with plans to develop the PMH Venue. *Id.* at ¶10.

-that the Application was on the Agenda for public hearing and approval at the Planning Board meeting that took place on August 12, 2025, and the PMH had every expectation that the Application would be approved at that meeting. *Id.* at ¶ 13

-that notwithstanding that the Defendant had just gone through an extensive process to update its land use ordinances and adopted the 2024 Code, the day before the scheduled Planning Board meeting, the Moratorium was passed retroactive to before the Application was filed. *Id.* at ¶ 14.

-that despite the fact that the Moratorium would not go into effect until September, because it was retroactive, the Planning Board refused to hold a public hearing on the Application. *Id.* at ¶ 16

-the reason for the Moratorium was to stop the development of the PMH Venue. *Id.* at ¶ 19

-despite repeated requests from PMH, Defendant has failed and refused to have a public hearing on the Application. *Id.* at ¶ 41

-enactment of the City's Obstacles was done with bad faith and intentional bias to prevent PMH from developing the PMH Venue. *Id.* at ¶ 49

-at the time the Application was filed, PMH had no knowledge that the City's Obstacles would be enacted. *Id.* at ¶ 55

These allegations are clearly sufficient to establish that PMH had acquired vested rights in the Application under the analysis laid out in *Thomas* and *Kittery.*

**D. PMH'S CLAIM FOR UNLAWFUL TAKING**

Defendant's contention with regard to PMH's claim for a regulatory taking appears to be two-fold. First, Defendant contends that the claim is not ripe because the Application has not yet been denied. Second, Defendant contends that the PMH has not been deprived of "all economically beneficial uses…" of the property. Again, Defendant's arguments are without merit.

With respect to ripeness, as noted above, all that is required is *de facto* finality for a claim to be ripe. *Pakdel v. City and County of San Francisco, California*, 594 U.S. 474, 479. There is no question that if the Planning Board ever takes any action on the Application, it will be denied

because of the Buffer Amendment. Defendant has acknowledged as much. As such, the claim is ripe.

PMH does not contend that the Defendant does not have the right to exercise its police powers. It does, *provided* that it does not go too far. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 418 (1922)("Furthermore, a restriction, though imposed for a public purpose, will not be lawful, unless the restriction is an appropriate means to the public end."). See also, *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal.*, 482 U.S. 304, 316 (1987)

Contrary to Defendant's assertions, the Supreme Court's holding in *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978) did not create a bright line test for determining whether an inverse taking has occurred. Rather, the Court noted that,

> …we have frequently observed that whether a particular restriction will be rendered invalid by the government's failure to pay for any losses proximately caused by it depends largely "upon the particular circumstances [in that] case."

*Id.* at 124

The Court went on to note that determining whether a taking has occurred is an "ad hoc *factual* inquiry." (emphasis added) *Id.* See also, *Goldblatt v. Town of Hempstead, N.Y.*, 369 U.S. 590, 594 (1962)("There is no set formula to determine where regulation ends and taking begins.").

In *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 25 S.Ct. 2074, 161 L.Ed.2d 876 (2005)[6], the Supreme Court was again faced with the question of how to evaluate a claim for a regulatory taking. The Court noted that while the holding in *Penn Central* conceded that there is no "set

---

[6] PMH acknowledges that the holding in *Lingle* clarified that if a governmental action does not advance a legitimate governmental interest, standing alone, such fact would support a claim for a violation of due process rights (as PMH has claimed) but not for a taking. PMH also notes that *Lingle* held that a claim for a taking could be based on "…the 'character of the governmental action' " *Lingle* at 539. To the extent that Defendant was confused by the allegations in Paragraph 72 of the Complaint, this provides sufficient clarification.

formula," significant factors had been identified. Importantly for this case, one of the primary factors noted was "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations.'" *Id.*at 539 [internal citations omitted].

As the First Circuit explained in *Franklin Mem'l Hosp. v. Harvey*, 575 F.3d 121 (1st Cir. 2009),

> The Supreme Court's regulatory takings jurisprudence has eschewed bright-line rules… Indeed, in contrast to the law of physical takings, which typically "involves the straightforward application of *per se* rules," *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302, 322, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002), "regulatory takings jurisprudence ... is characterized by 'essentially ad hoc, factual inquiries,' " *id.* (quoting *Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)), "designed to allow 'careful examination and weighing of all the relevant circumstances,' " *id.* (quoting *Palazzolo v. Rhode Island,* 533 U.S. 606, 636, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (O'Connor, J., concurring)).

*Id.* at 125-126

The First Circuit went on to note that in the context of regulatory takings, there are two types of *per se* takings - physical invasion of property, however minor, and deprivation of "all economically beneficial use" of the property at issue. *Id.* If neither of those situations is present, however, that does not mean that there has not been a regulatory taking. Rather, the Court must then employ an ad hoc analysis which focuses on the three factors identified in *Penn Central*: (1) "[t]he economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the government action." *Id.* at 126-127. See also, *Maine Educ. Ass'n Benefits Tr. v. Cioppa*, 695 F.3d 145, 153 (1st Cir. 2012). In considering these factors,

> The inquiry turns in large part, albeit not exclusively, upon the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests." *Lingle*, 544 U.S. at 540, 125 S. Ct. 2074. Ultimately, this

> inquiry "aims to identify regulatory actions that are functionally equivalent to the classic taking in which the government directly appropriates private property or ousts the owner from his domain." Id. at 539, 125 S. Ct. 2074.

*Franklin Mem'l Hosp.* at 126–27

Applying these factors to the Complaint it is clear that PMH has sufficiently alleged that the City's Obstacles constituted a regulatory taking without just compensation. PMH has alleged that as a result of the City's Obstacles, PMH cannot develop the PMH Venue at the PMH Site. Complaint at ¶ 44. PMH has also alleged that enactment of the City's Obstacles worked to directly deprive PMH of the use and enjoyment of its property without just compensation. *Id.* at ¶ 50 Taken together, these allegations establish that the City's Obstacles prevented PMH from developing the project (the PMH Venue) that it had the absolute right to develop under the 2024 Code prior to the enactment of the City's Obstacles. Such allegations are sufficient to support PMH's claim for a regulatory taking.

**E. PMH'S PROCEDURAL DUE PROCESS CLAIM**

The City's penultimate argument is that nothing in the Complaint takes issue with the process. Such is not the case. The entirety of the Complaint outlines a process which was fundamentally unfair and constitutionally inadequate.

As this Court has noted,

> To state an actionable procedural due process claim under § 1983, plaintiff must (1) allege facts that support a determination that the plaintiff has a property interest, as defined by state law, and (2) that the conduct complained of, committed under color of state law, has deprived her of that property interest without constitutionally adequate procedure.

*JSS Realty Co., LLC v. Town of Kittery*, 177 F. Supp. 2d 64, 71 (D. Me. 2001)

Simply put, "[w]hen government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). This

requirement has traditionally been referred to as 'procedural' due process." *United States v. Salerno*, 481 U.S. 739, 746 (1987).

In this case, the process complained of is as alleged in the Complaint: the Moratorium with retroactive application, enacted the day before PMH was scheduled to have a planning board hearing at which approval of the Application was expected, for the purpose of giving the Defendant sufficient time to pass an unneeded retroactive amendment to the 2024 Code (the Buffer Amendment), which resulted in PMH being deprived of its right to construct the PMH Venue on the PMH Site in accordance with the 2024 Code. Complaint at ¶¶ 14, 19, 24, 25, 37, 38, 44. In short, the City's Obstacles were not implemented in a "fair manner." In fact, as alleged in the Complaint, the enactment of the City's Obstacles with retroactive effect to December 1, 2024, was fundamentally *unfair* and an abuse of power by the Defendant. The Complaint contains sufficient allegations to support a claim for violation of PMH's procedural due process rights.

**F. PMH'S STATE LAW CLAIMS**

For all of the same reasons set forth above that the MTD must be denied as to PMH's federal claims, the MTD must also be denied as to PMH's state claims.

**CONCLUSION**

For all of the reasons set forth above, it is clear that PMH's claims are ripe and that the Complaint contains sufficient allegations to support those claims. To the extent, however, that the Court believes additional factual allegations are warranted, PMH hereby respectfully requests leave to amend the Complaint.

WHEREFORE, PMH respectfully requests that the MTD be dismissed in its entirety and that the Court grant such other and further relief as is just and proper.

Dated: August 11, 2026

/s/ Lee H. Bals
Lee H. Bals, Bar #3412

Attorney for Plaintiff

MARCUS|CLEGG
16 Middle Street, Unit 501
Portland, ME 04101
(207) 828-8000
lhb@marcusclegg.com