**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| PORTLAND MUSIC HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:26-cv-00304-JCN |
| v. | ) | |
| | ) | |
| THE CITY OF PORTLAND, | ) | |
| | ) | |
| Defendant | ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

The City of Portland validly enacted a zoning regulation impacting the *scope* of one particular use of the land in issue: a buffer zone prohibiting a large music venue of 1,000 or more seats. Compliant music venues of under 1,000 seats are permitted on the site; but large ones, like the one proposed, are not. Plaintiff points to no procedural infirmity in the enactment of this zoning law. As for any landowner in the City, the land is governed by the entire array of other permissible or conditional uses under the City's zoning laws, allowing for a range of development. Plaintiff does not allege, nor can it, that the land has no fair market value because it is undevelopable, or that the new zoning regulation – a large theater venue buffer zone – renders it so. Furthermore, Plaintiff leaves us uncertain about whether it has even exercised the option to acquire the land, and if so, how anything about the current land use code substantially impaired that acquisition. Zoning is an integral part of the City's urban and economic development planning. In that respect, this land is no different than any other land governed by the City's Code of Ordinances. Plaintiff fails to stake out a constitutional claim on these facts. A finding otherwise here would threaten to set precedent

creating constitutional claims out of whole cloth in every zoning amendment, enactment or decision made by the City.

First, however, Plaintiff may lack standing. Plaintiff's claim of standing rests on a nuance that is "interrelated" to the constitutional claims themselves, because Plaintiff has not (yet) pressed its development Application to the point of finality. The City's buffer zone amendment is indeed final and part of the land use code. But there are myriad other development requirements, and so in present posture Plaintiff is demanding that the Court and the City assume, before a final decision of the City's Planning Board, that Plaintiff has *also* complied with those myriad other requirements. Without a final decision, it is uncertain whether the abstract injury claimed (a substantial impairment of a land acquisition contract, or the regulatory "taking" of fair market value of land) is "fairly traceable" to the validly enacted buffer amendment. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 438-39 (2017) (listing Article III standing elements in regulatory takings case, and emphasizing that "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought").

Plaintiff cites *Pakdel v. City and Cty. of San Francisco, Cal.*, 594 U.S. 474 (2021). But *Pakdel* supports the City's position on standing. The landowner there did in fact pursue the property tax exemption to final decision before the city's administrative department. *Id.* at 475. The Supreme Court reaffirmed that element of standing for the regulatory taking claim, explaining that the administrative decision was final, showing that the "government [has made] up its mind." *Id*. The Court held that pursuing further administrative appeals of that final decision were unnecessary for standing for a regulatory taking claim, holding merely that "exhaustion of state remedies is not a prerequisite to [bringing a regulatory taking claim] under 42 U.S.C. § 1983." *Id*. (citing *Knick v. Twp. of Scott*, 588 U.S. 180 (2019)). While *Pakdel* involved a claim of regulatory taking, its holding

on standing should extend to the impairment of contracts claim in this case as well, because the impairment of contracts claim must also include a "fairly traceable" causal connection between the alleged government conduct in issue and the alleged injury. Here, Plaintiff has not even pursued its Application to the first tier of final decision undisputedly present in *Pakdel*. *Id*.

Similarly, *in Palazzolo v. Rhode Island*, 533 U.S. 606 (2001), the developer did in fact pursue its development proposal to final decision by the governing body, the Rhode Island Coastal Resources Management Council. *Id*. at 611-616. The issue there, involving the ripeness of an inverse condemnation claim based on wetlands fill regulations, was whether that final decision ripened the inverse condemnation claim or whether more was needed. *Id*. at 619-21. The Rhode Island Supreme Court had said more was needed because the petitioner had "fail[ed] to explore any other use for the property that would involve filling substantially less wetlands." *Id*. at 619 (cleaned up). The Supreme Court overruled that *ripeness* determination, while agreeing with the Rhode Island Supreme Court on the merits, that the wetland regulation did not give rise to a regulatory takings claim given that "all economically beneficial use was not deprived because the uplands portion of the property can still be improved." *Id*. at 630.

This is a question of standing, not necessarily "ripeness." Under Plaintiff's theory of standing, every landowner in the City can claim standing, without more, whenever they think to themselves that any validly enacted Land Use Code provision (including but not limited to the buffer zone in issue) might prevent them from doing exactly what they want to do with their land. It may be a question interrelated to the lack of merits of such claims, but it also underscores why there needs to be a finality requirement, even in regulatory takings cases, to ensure that the government has made a decision about the regulation in issue as a basis for a claim of particularized injury and circumstances. "The rationales for the finality requirement underscore that nothing more than *de*

*facto* finality is necessary. This requirement ensures that a plaintiff has actually 'been injured by the Government's action' and is not prematurely suing over a hypothetical harm." *Pakdel*, 594 U.S. at 479. While we do not dispute the scope of the buffer regulation and that it would prohibit a 3,300-seat venue on this site, it is impossible to know if the regulation "has gone too far" if a host of other regulations which are not in issue may also lead to denial of the proposal. *Id*. (citations omitted).

Plaintiff further leaves us in doubt about the specific terms of the alleged "Option" contract. Those terms are necessary to analyze all of its constitutional claims, not only the impairment of contract claim. We assume the "option" is a "contract" enforceable by specific performance, but that is not the point at all on this motion to dismiss: Plaintiff directs us to only paragraphs 8 and 43 of its Complaint (Pl. Opp. at p. 6, ECF Doc. 12), stating merely that Plaintiff was assigned and now holds an "an option to acquire the PMH site" (¶ 8) and that the option is (or was) "a contractual relationship with the owner of the PMH site [i.e., the grantor of the option]" (¶ 43). But we need to know more factual detail than that in order to determine whether Plaintiff has stated a claim for impairment of contract, violation of substantive or procedural due process, or regulatory taking. Has the option been exercised? If so, there may be no impairment of it, let alone a substantial impairment. What is or was the price of the option? The owner of the site can develop it in a whole assortment of legal ways under the City's land use code, including as a theater/music venue of under 1,000 seat capacity. How, then, is the City's validly enacted zoning regulation, including the City's power to enact retroactive zoning regulations under the extant moratorium power granted to all municipalities by law, 30-A M.R.S. § 4356, unconstitutional? These are questions that must be addressed at the pleading stage, because they are essential elements of each constitutional claim asserted by the Plaintiff. "Factual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, *Federal*

*Practice and Procedure* § 1216, pp. 235–236 (3d ed.2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")). Here, if we speculate to assume the terms, nature, and status of what would be a sophisticated developer's "option" contract, we do not even have a suspicion of a legally cognizable right of action – the Complaint's omission of these requisite facts relating to terms, nature, and status of an option leave us with the suspicion that no legally cognizable right of action exists. That the Plaintiff in its response to the motion (ECF Doc. No. 12) never offered by amendment to the pleadings any such details, serves only to underscore that suspicion: Plaintiff has no claims under the constitution.

For the first time at page 7 of its opposition, Plaintiff states that the "Option is worthless" because of the City's validly enacted regulations. ECF Doc. No. 12 at 7. But that, again, is a conclusory assertion, made without providing relevant details on the terms of the option by which to assess that advocate's statement. There must be disclosed a factual premise to the conclusion, which is lacking here. The courts "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As an extreme example, for purposes of driving this point home, imagine an "option" to purchase this site where the grantee of the option might have the intention to develop it as a nuclear power station. That is probably an option that would not be exercised because the land use code would end up prohibiting that use (or, if unaddressed specifically in the code, a moratorium/code amendment procedure would be reasonably anticipated by anyone). However, all that does not make such an option *worthless*; the "option" to acquire land still exists and has value, for it is enforceable if the grantee nonetheless exercises it to acquire the land, or assigns it for

consideration to someone who will (if it is assignable). An option contract is an *option* – the grantee can exercise it, or not, for any reason or no reason at all; the specific nature of the intended land use in issue is not a conditional term of the option, because the option can still be exercised regardless of the specifically intended land use. We do not know any of the terms of this option. Is it an option that can be exercised to acquire this site without more (as facially alleged, Complaint ¶ 8), and if so, does it not retain value as an option to acquire land? That is the more likely set of facts if we are to speculate on what the option says, bringing this case entirely out of the realm of impairment of contract claims, regulatory taking claims, substantive due process violations, etc.

Plaintiff's "vested rights" arguments are incorrect, especially under a substantive due process analysis. On the record on the motion to dismiss, the City validly exercised its moratorium powers under 30-A M.R.S. § 4356, and validly enacted a buffer zone amendment with express findings clearly relating to public health, safety, morals and general welfare. ECF Doc. Nos. 9-1 to 9-3. Plaintiff does not allege, beyond legal labels and conclusory allegations, any detailed facts to undermine these conclusions. The Plaintiff did not have "vested rights" under Maine law to its specific development proposal, because Maine law includes a municipality's regulatory power to enact moratoria on submitted applications and to enact specific retroactive zoning amendments relating to them.

Plaintiff's response on the failure to state a regulatory takings claim is unavailing. All regulations have real or hypothetical impacts on the economic interests of landowners. But all regulations are not takings – the most important analytical concept in determining whether a regulation "goes too far" is of course "informed by the purpose of the Takings Clause, which is to prevent the government from 'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " *Palazzolo*, 533 U.S. at 617-18. The

aim is "to identify regulatory actions that are functionally equivalent to the classic taking." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005). For example, in rejecting the merits of the regulatory takings claim in *Palazzolo*, the Court held that a wetland fill regulation did not effect a taking because "[a] regulation permitting a landowner to build a substantial residence on an 18–acre parcel does not leave the property economically idle." *Id*. (cleaned up). Here, the land is not "economically idle." Even as a site for a music venue, it would meet the buffer zone for a venue of up to 1,000 seats.[1] The buffer amendment is not a ban on music venues. Further, tracing this argument back to the "standing" issue at the threshold, "the final decision requirement is not satisfied when a developer submits, and a land-use authority denies, a grandiose development proposal, leaving open the possibility that lesser uses of the property might be permitted." *Id*. at 619. Here, the regulation in issue certainly leaves open the possibility of a permitted use as a music venue, just not one as "grandiose" as Plaintiff had in mind. Therefore, Plaintiff fails to state a claim for regulatory taking.

Finally, Plaintiff's position on the procedural due process claim is also without merit. Plaintiff neither alleges nor argues that it had no notice and opportunity to be heard in the procedure for enactment of the moratorium and any zoning amendments. Plaintiff disagrees with the policies supporting the City's enactments, but was not deprived of due process to make those disagreements matters of record and to be heard on them. Ultimately, Plaintiff's disagreement with the land use code and the City's legitimate exercise of moratorium power is the only basis Plaintiff asserts for a claim here. That alone is never enough.

[1] For general context, the Westbrook Performing Arts Center has a capacity of 1,000 seats. *See* https://portlandovations.org/about/performance-venues/; https://www.westbrookpac.org/about-2/ (both last visited Aug. 22, 2026). Hannaford Hall on the USM Portland campus has a 520-seat capacity; John Ford Auditorium at Portland High School is a 576-seat venue; the First Parish Church Meeting House venue has a 700-seat capacity; the Crewe Center for the Arts on USM's campus is a 200-seat venue. *See* https://portlandovations.org/about/performance-venues/.

Defendant respectfully requests dismissal with prejudice for failure to state a claim, or in the alternative dismissal without prejudice for lack of standing.

Dated at Portland, Maine this 25nd day of August, 2026.

NORMAN, HANSON & DETROY, LLC

*/s/ Russell B. Pierce, Jr.*
Russell B. Pierce, Jr., Esq.
Attorney for Defendant City of Portland

Norman, Hanson & DeTroy, LLC
Two Canal Plaza
220 Middle Street
Portland, ME 04112-4600
(207) 774-7000
rpierce@nhdlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2026, I electronically filed this DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Russell B. Pierce, Jr.*
Russell B. Pierce, Jr., Esq.
Attorney for Defendant City of Portland

Norman, Hanson & DeTroy, LLC
220 Middle Street, P.O. Box 4600
Portland, ME 04112-4600
(207) 774-7000
rpierce@nhdlaw.com